21-2100. May it please the Court, Your Honor. I would only like five minutes to state the remaining issue on this appeal. Given the Second Circuit decision in 10012 Holdings v. Sentinel in December of 2011, the Court of Appeals has decided that the Court of Appeals has decided that the Court of Appeals has December 26th of 2021 decided, after perfection of my appeal, one remaining point on the appeal. Centered on the Roundabout case. Lead New York Authority, focus of the Court s decision in 1002 Holdings, focus of this appeal. Respectfully, the Court misapprehends the Roundabout case, mistakenly analyzing the coverage terms in issue as standard loss or damage terms, and then applying those terms beyond the limited context to which the Roundabout Court applied it. In addition, the Court misapprehends the Roundabout case, misapprehending the Roundabout to the limited context of an all-risk policy, defined in Roundabout as a policy providing coverage not automatic, not providing presumptive coverage without extended coverage, in Roundabout, at issue, were not standard loss or damage terms, as in 1002 Holdings. Counsel, Counsel, since Sentinel, has there been any New York court that has suggested that Sentinel was wrong? That was what? Has suggested that Sentinel was wrong. I could tell you that there are no New York decisions that vary Roundabout, which give preference. No, that's not my question. You see, Sentinel is binding on us unless there is a New York decision that casts doubt on it, even if Sentinel was wrong in reading Roundabout. So what I want to know is, is there anything that New York has done, any New York action that would cause us to say Sentinel no longer binds us? With respect, Sentinel was decided in December of 2021, and New York law is inconsistent with Sentinel. You know, you're still not answering my question, because we are bound by Sentinel, whether Sentinel is right, wrong, or indifferent, unless there is something in New York since Sentinel. It can be the lowest court of New York, but some New York court that says Sentinel is doubtful. And, you know, that may happen after, but just in terms of what we can do today, that's my question. The way you phrased it, I'd have to say no, absolutely not. I haven't found one. I looked. There is none, but the argument that we're making is different from what you pose, and I would say it this way. This court, like any other federal court, is bound by the separation of powers between the state and the federal courts. I will jump ahead to this argument. What do you want? What are you asking us to do? A remand on the issue of damages. What do you want us to do about Sentinel? I want the court to recognize a misapprehension of lead New York authority that's been applied in Sentinel, which has deprived the litigant, a state court litigant, of his cause of action, which otherwise is viable in the Supreme Court in Nassau County where this case originated. And what I mean by that is simple. New York law roundabout gives consideration and weight to extended coverage. The decision- Are you asking this panel to overturn? I'm asking this court to reconsider its decision in 10012 holding and essentially to issue a decision to- This court is not authorized to or empowered to overturn the decision of a prior panel unless, you know, we go in bank or unless there's some Supreme Court intervening decision or court of appeals, whether it be a court of appeals intervening decision. Do you understand that? Yes, but two things I would say. Two of the judges that decided 10012 holdings is on this panel, and the second thing I would point out- That doesn't make any difference. Yes, that's true. I am often wrong, but I've been bound by my freedom of error. That's true, Judge. That's true, Judge. But you ask about the Supreme Court, and the Supreme Court does have something to say. In the Rodriguez case, the refrain is, we should not rush too quickly past threshold questions of the separation of powers between the state and federal court. And again, I point out to you respectfully, I was able to state a cause of action under roundabout, pursuant to New York law, pursuant to the terms of this policy, and pursuant to the facts. And here's what I mean. This policy expressly insures against civil authority action, suspending operations, causing loss of business income. A statement of fact of what occurred, a statement of claim that was pled in the state court. We will- Excuse me, Mr. Call. That's not what the policy says. It doesn't say that whenever civil authority closes you down, we will reimburse. It talks about action of civil authority that prohibits access to the premises due to physical loss or damage to property, to related property in the area. Now, that sounds to me, and I wasn't on the sentinel panel. Yes, you were not. That sounds to me like the same physical damage rules that would apply to an interruption caused by physical damage to your property. This is physical damage to the property next door, as when there's a fire, the building next door is condemned, and the fire department says nobody can enter this street until we knock that building down. Let me show you what I say is the mistake in that thinking, for what it's worth. Physical loss or damage is said to be a limitation on physical damages only according to what the holding is in federal case law rule. Why do I say that? I'll tell you specifically and exactly. Roundabout took the typical standard loss or damage terms such as you have in 1002 holdings, which are the words direct physical loss or physical damage to property. But in Roundabout, in addition to those words, were the words destruction of property or damage to facilities. Roundabout court says at 302, AD 2D at 8, we got together with these loss or damage terms. But, okay, fine, but why would, forget New York law, forget federal law, forget any precedent there is. Why on earth would I read direct physical loss or damage to property in this policy to cover the COVID epidemic? And bear in mind that that question has been asked by now in hundreds of cases under the laws of virtually every state, I suspect, by now in either federal or state court. And the insurers, I'm afraid, are coming up empty. Yes, they are. Wrongly so, and I'll tell you why. You're forgetting that civil authority action and business interruption, extended coverage provisions are not just policy provisions as you've analyzed it in 102 holdings. They are extended provisions that the insured pays extra for. Paid extra for the civil authority. Right, you paid extra for this as compared to a policy that covered only physical damage to your premises. And there's an extra endorsement where civil, which you can pay for, where civil authority closing you down can give you, is insured. But it says explicitly where the civil action is due to direct physical loss or damage to property, not your property, property other than the described premises. But we're glossing over what I'm saying to you, which is that physical loss or damage by itself in roundabout does not limit the policy to physical damage. I'm sorry, that's not very persuasive because in roundabout, it's true that you could say in roundabout, there were two things that led the court to reach that result in roundabout. And one of them is not present here. But the other one is. Which one is present here? The one that's present is due to direct physical loss or damage to property. It talks about civil authority actions that are based on direct physical loss or damage to someone's property. Could you identify for me what physical damage to the property of somebody in your neighborhood you're relying on? Absolutely no physical damage whatsoever is relied upon by the insured. What I'm saying to you is that the phrase direct physical loss or damage does not mean by itself physical damages. Counsel. Counsel. A different question. I think you've been answering each other sufficiently. Is there any case, raising your point, that is going up in the New York courts rather than having been taken to the federal courts? Yes, there's one that's cited in the brief. I believe it's Gristmill. And Gristmill, which is- Yeah, no, just that is going up. And presumably, if the New York Court of Appeals disagrees with all these other holdings, it will fairly shortly, because they can move quickly if they want, come out your way. And at that point, all sorts of things can happen. But why should we, even if we could, do anything that runs against everything that has been done without seeing what happens in New York? Because that's not fair to the state litigant for this reason. The state litigant goes into the Supreme Court in Nassau County relying on roundabout, not on federal case law. It didn't start the case here. It was removed here. Yeah, I'm aware of that. But here's the thing- Mr. Gould, you've reserved some time for rebuttal. We'll hear from your friend on the other side. Thank you. Good morning. May it please the Court, Marcy Goldstein-Cocliss, Goldberg-Segala for Nationwide Mutual Insurance Company. Your Honors, as we've been speaking this morning, the issues before the Court today are no different than the issues with which this Court has already ruled concerning business income losses arising out of closures mandated by the executive orders issued to curb the spread of COVID-19. The facts alleged and the arguments advanced by Appellant B.R. Restaurant are nearly identical to those of the insureds in the five COVID-19 cases where this Court has already ruled, including, as we've been discussing already, 112 Holdings v. Sentinel. And, as well, a vast number of decisions issued by the New York District and Trial Courts, which are being issued weekly, if not daily, and none of which I'm aware of, Your Honor, that have varied from the holding of 112 Holdings. Again, here today, B.R. Appellant asked this Court to address whether it's entitled to coverage for lost income under its business owners' property policy issued by Nationwide, where, admittedly, there was no physical damage to either B.R.'s premises or any third-party property, but only a limitation on its use of the property due to the executive orders. As this Court has heard before, B.R. argues that this loss of use suffices to trigger coverage under the policy's extended but limited coverage for acts of civil authority. This Court's decision in 112 Holdings forecloses B.R.'s arguments before the Court today. There's no variation in the Nationwide policy language from that which this Court has already considered and ruled, applying New York law. To address the point that counsel makes, there is no federal case law rule. Reference to similar decisions in other jurisdictions, as Judge Brown had noted in his opinion, does not create a federal common law. It just underscores the similarities amongst the jurisdictions concerning principles of contract interpretation. These principles may be being applied in the same way to interpret similar or identical policy language and factually similar claims, but this consistency cannot be misconstrued as some impermissible act of the federal courts. Especially here again, where if you read Judge Brown's decision, he cited two New York law roundabout and subsequently the Cheda decision, which was an earlier COVID decision. And this Court, as well, has since performed the same analysis and reached the same conclusions. While this Court has not yet addressed the applicability of a virus exclusion like that in the Nationwide policy, that was also raised by B.R., there's not necessarily any reason, as this Court has noted, to rely on exclusions to coverage. Where the insured has not demonstrated, it submitted a covered claim. But under New York law here again, the virus exclusion would not apply. Several courts of this state, including Judge Brown in this matter, have applied a virus exclusion in identical circumstances, holding again that the virus was the efficient proximate cause of the insured's loss, where again, the claim flows directly from the executive orders issued in response to the pandemic. I think, Your Honors, as we've discussed here, there's absolutely no physical damage at issue, and so there's no trigger of coverage under either the business income and extra expense provisions of the policy or the civil authority extended coverage. There is no distinction to be drawn, as counsel argues, as appellant argues, with respect to the extension of the civil authority coverage. It again is bound by the clear and unambiguous policy language requiring direct physical loss of or damage to property, of which here there was none. There's no allegations of anything other than a limited loss of use here. Again, that's another reason why the extended authority under the civil authority provision would not be triggered here. It was not a complete prohibition. B.R. Restaurant is a restaurant, an essential business that was able to operate takeout and delivery services during the effect of the orders. So for that additional reason, there would be no trigger of the civil authority coverage, which again, as this Court has noted, contrary to counsel's argument, there is no material distinction with respect to the policy provisions at issue in roundabout, which have been countlessly applied here to the provisions of the nationwide policy or that at issue in any of the other matters which this Court has already decided. Again, just to speak again, I don't think there's really any weight to the argument that there's any type of federal common law here. We concede this is a state law issue. We've always argued it as a state law issue. While it was removed to the federal district court as is nationwide's right under diversity jurisdiction, there is no reason to think that there was any creation of federal common law or any reason that the case would have a right to be remanded back to the state court. I also would note that this was on a motion to dismiss, so we're far from asserting any argument with respect to any damages. At this point, it hasn't even been established that appellant has stated a claim for which he can seek damages, which we maintain he has not. Thank you very much. Thank you, Your Honors. Mr. Cole? Counsel just told you that they argued roundabout, that that was the basis of their argument. You won't even find the cite to that brief. You won't even find the cite to that case in the brief. You'll find a hundred cases, all federal. When you get to roundabout on the table of cases, it says passive here, there, and everywhere. It's not made. That argument is not made. No one is making the argument. I respectfully submit to you as to it being federal case law rule. The insurers together cited it as federal case law rule in their application for multidistrict litigation. I just don't understand what you're talking about. The Sentinel case, which is the one that we've been asking you about, and which apparently seems to my colleagues who wrote it to be binding in this case, explicitly was about New York law. It's not about federal law. It relies on roundabout. Now, maybe it relied wrongly. Maybe it got that wrong, but you can't say that the decision that we are now bound by was one of these cases that says there's a thousand federal cases. It's one that says here's what New York law is, as best we can interpret it, and this is the answer. Well, Judge, let me ask you this. If you were to look at it, let's just say hypothetically, and you were to see that you made a mistake, that in fact, let's say hypothetically I was correct, that this misapplied roundabout, that had you applied it correctly, you would not make the same decision here. And by the way, there is a decision. Well, then, excuse me, if I were persuaded of that. Well, let me try again to persuade you. I believe that the opinion would say we are bound by this decision, so you lose, but the concurring judge, Lynch, suggests respectfully that the court consider this case en banc, because that's the only way that that case could be overturned. And I would guess that that would be more persuasive, coming from those two gentlemen, if they said we were wrong the first time. They're not saying that. But for now, your argument is pretty much one that you are free to make in a petition for rehearing en banc, but we're not in a position to make that ruling. You know, and mostly, you see, the problem with us judges is we have a lot of cases. We're usually not great judicial activists who are looking to impose our views. We look to precedent. There's a precedent. It resolves this case. The precedent might be wrong, but it's going to be a very rare thing to urge otherwise and to say that should be overruled. And, you know, here, that's where all those other federal cases, all those cases from states other than New York interpreting similar provisions in insurance policies come into play, because it's kind of a hard sell to try to persuade a majority of the active judges of this court, not only that their colleagues got this one wrong, but they got it wrong in a situation where courts all over the country seem to think they got it right. Of course. Of course I have the impossible objective here. However, let me try one more shot to persuade you. Why don't we end it on that? I think you've taken your shot, yes. Let me try one more shot to persuade Judge Lynch. No, I think you're well over your time. And I think we're well aware of all of your shots. Thank you very much, Judge Cole. You had a rough time, but that's the way it is. It's the nature of the business, Judge. It is indeed. It's not us. But I want you to reconsider it. I've been on that side of the podium having rough times, too. I know what you feel like. We'll reserve the decision. Thank you very much. Thank you, Judge.